CLARA E. BALDWIN, APPELLEE, V. OMAHA & COUNCIL
BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED FEBRUARY 2, 1921. No. 21690.

1. **Evidence: CONCLUSIONS OF WITNESS.** Where the issue of negligence is to be determined by the method and manner of operating a street car while going into and around a certain curve, testimony that the speed was fast, terrible, frightful, greater than ever before, are mere conclusions and form no basis from which the jury may determine the issue of negligence.

2. **Evidence** examined, and *held* sufficient to show negligence on the part of defendant.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*John L. Webster* and *William M. Burton,* for appellant.

*Gaines, Ziegler, Van Orsdel & Gaines, contra.*

ALDRICH, J.

This is an action for personal injuries brought by appellee against the Omaha & Council Bluffs Street Railway Company, appellant. The verdict and judgment below was for $8,500.

On November 10, 1916, about 5:30 in the evening, plaintiff was a passenger on one of defendant's cars. The car was crowded, and plaintiff was compelled to stand up, steadying herself by clinging to a strap. There was standing room only, yet the car was not so crowded as to cause people to jostle against plaintiff. Plaintiff stood in the aisle about two-thirds of the way home. She was accompanied by her friend, Miss Cahow, with whom she stood in the aisle. They engaged in general conversation, and did not pay close attention as to how rapidly the car was running, but plaintiff testified that she had a general impression and believed that the car was running at a high rate of speed. At the corner it gave a violent lurch, throwing plaintiff, twisting her right knee. There was no notice-

able slackening of speed as the car approached the curve. This frightened the passengers, causing confusion. When straightened up and righted around, she was still holding to the strap, by means of which she maintained her standing position. This was corroborated by Miss Cahow's testimony. She was moved and swayed around in the car the same as plaintiff.

The only essential difference between plaintiff's and Miss Cahow's testimony is that in the instant case plaintiff specified the number of miles an hour the car was going at the time of the accident from her observation and experience in judging miles an hour which a street car, automobile, or wagon might be going. Plaintiff stated the car, in her judgment, was moving from 14 to 16 miles an hour. This is definite and certain, and supplements her testimony as given at the former trial. At this particular juncture of the case the evidence, as specified at this particular trial, was sufficient to give the jury an opportunity to pass judgment on the rate of speed which the car traveled at the time of the accident, and whether the car was operated negligently.

In some jurisdictions the rule is adhered to that a description of the speed of a car as being at a high rate of speed, going extraordinarily fast, is held to be proper and sufficient description to entitle the jury to form a verdict, but the rule is otherwise in this state. It has been held in the majority of jurisdictions that this kind of evidence is incompetent and possesses no probative force, and that is the rule of this court. On this proposition, in the body of the opinion in *Lindgren v. Omaha Street R. Co.*, 73 Neb. 628, it was said: "If the witness, in his opinion, had been asked to state whether the car was running 5, 10, or 15 miles an hour, the answer would have given the jury a standard to compare its rate of speed with the rate prescribed by the ordinance for the running of cars at the place of the injury." It is apparent that this indefiniteness and uncertainty that existed in the evidence at the former trial is now cured, and the jury were given a def-

inite and specific rate of speed as measured in miles an hour from which to determine whether defendant was driving its car at a negligent rate of speed. The verdict of the jury indicates that it used this standard rate of speed as fixed by plaintiff and corroborated by other evidence. This way of measuring speed of cars is the rule laid down by this court in many cases under similar circumstances.

The cases cited by appellant are to the effect that the law of the case and the testimony of witnesses is established for the instant case to be the same as in the former case brought here. This statement is in part inaccurate. The statement of fact as testified to by plaintiff in the description of the speed of the car can be supplemented by the facts as she remembered them when she testified in the instant case. The description of the speed of the car, that it was greater than ever before, that it was terrible, frightful, very unusual and extraordinary, that it would seem as though the car would leave the track, "is a mere accumulation of declamatory adjectives, and is not evidence of the defendant's negligence to be submitted to the jury." This language was used in *Hunt v. Boston Elevated R. Co.*, 201 Mass. 182. This quotation is merely given as illustrative of the rule adopted by this state, and the testimony as given in the instant case cures the former defect upon which the opinion was rendered at that time. The record discloses that the evidence preponderates in favor of plaintiff, and that the car went into the curve at an unusual and extraordinary rate of speed, to wit, at the rate of from 14 to 16 miles an hour, and that this speed was inconsistent with the passenger's safety in the street car, and that this negligence produced a severe lurch. The motorman, Bushousen, who was in charge of the car, testified that the speed was as high as 12 miles an hour before he reached the curve, which corroborates plaintiff's evidence on that point and shows it was approximately accurate.

The plaintiff received a painful injury, and suffered the loss of much time after the accident, and the record discloses general impairment of health caused by this acci-

dent, and we base our decision, not upon technicalites, but plain reason, sufficiency of evidence, and the demand of ordinary justice. Estimated by this standard, we say that the compensation accorded by the jury was fair, reasonable, and consistent with the evidence, and therefore the judgment handed down by the court should be

AFFIRMED.

LETTON, J., not being a member of the division which heard this case, did not participate.